# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

Hiscox Dedicated Corporate Member
Limited and Beazley Underwriting
Limited,

       Plaintiffs,

v.

Benefytt Technologies, Inc. f/k/a Health
Insurance Innovations, Inc.,

       Defendant.

Case No. 8:21-cv-575

## COMPLAINT

Plaintiffs Hiscox Dedicated Corporate Member Limited and Beazley Underwriting Limited (collectively, "Plaintiffs"), by and through their undersigned counsel, submit the following Complaint against Defendant Benefytt Technologies, Inc. f/k/a Health Insurance Innovations, Inc., and allege as follows:

## Introduction

1.    Hiscox Dedicated Corporate Member Limited and Beazley Underwriting Limited, thorough Lloyd's Syndicates 33 and 2623 ("Underwriters"), insured Benefytt Technologies f/k/a Health Insurance Innovations, Inc. ("HII") under Policy No. B0621PHEAL003118 (the "2018-2019 Policy"), effective from

May 8, 2018 to May 8, 2019.  Underwriters also insured HII for the period from May 8, 2017 to May 8, 2018 under Policy No. B0507N17FT08360 (the "2017-2018 Policy").  (The 2017-2018 Policy and 2018-2019 Policy are collectively referred to herein as the "Policies.")  The limit of liability under each of these policies was $10,000,000 in the aggregate.

2.      Underwriters provided defense and indemnity to HII in connection with multiple actions against HII and its officers and directors alleging various securities law violations.  Each of the actions involved the same Wrongful Act or Interrelated Wrongful Acts, as those terms are defined in the Policies.  The actions shared a common factual nexus, with the plaintiffs in these actions alleging deceptive sales practices centered on the breadth of coverage offered by HII's products and the compliance of those products with the Affordable Care Act.  The plaintiffs in all of these actions alleged false statements and material omissions in SEC filings and other public statements to conceal those deceptive sales practices.

3.      The first of these actions was filed during the term of the 2017-2018 Policy and prior to inception of the 2018-2019 Policy.  As a result, the terms of the Policies that Underwriters provided to HII mandate that all of these actions shall be treated as single Claim first made in the policy period in effect when the first such action was filed.  Thus the defense and indemnity provided by Underwriters fell under the 2017-2018 Policy.

37161445.5

4.      After Underwriters paid nearly their full $10,000,000 limit under the 2017-2018 Policy, HII demanded that Underwriters pay $10,000,000 from the 2018-2019 Policy in order to settle one of these actions, styled *Keippel v. Health Insurance Innovations, Inc., et al.* (the "Keippel Action").  Because the Keippel Action involved the same Wrongful Act or Interrelated Wrongful Acts as the other actions, any defense or indemnity provided for the Keippel Action should have been paid from the 2017-2018 Policy.  Once the limit under the 2017-2018 Policy was exhausted, HII should have looked to its excess insurers in the 2017-2018 policy year to fund the defense and settlement of the Keippel Action.

5.      HII refused to acknowledge that the Keippel Action was a Claim first made during the 2017-2018 Policy.

6.      In order to protect their insureds with respect to the claims made against them, Underwriters agreed to pay the settlement for the Keippel Action from the 2018-2019 Policy, under a full reservation of rights, including the right to recoup from HII the amounts that Underwriters would not have paid if HII had accepted that the Keippel Action was a Claim first made during the 2017-2018 Policy.

7.      By this action, Underwriters seek to recover from HII those amounts paid for the Keippel Action and the other actions in excess of the limit of the 2017-2018 Policy.

37161445.5

## The Parties

8.     Hiscox Dedicated Corporate Member Limited is a company incorporated under the laws of the United Kingdom and has its principal place of business in London, England.

9.     Hiscox Dedicated Corporate Member Limited is a capital provider to and underwriting member of Syndicate 33, which is an underwriting syndicate doing business in the Lloyd's insurance marketplace.

10.     Beazley Underwriting Limited is a company incorporated under the laws of the United Kingdom and has its principal place of business in London, England.

11.     Beazley Underwriting Limited is a capital provider to and underwriting member of Syndicate 2623, which is an underwriting syndicate doing business in the Lloyd's insurance marketplace.

12.     Defendant Benefytt Technologies, Inc. f/k/a Health Insurance Innovations, Inc. is a corporation, upon information and belief, incorporated under Delaware law with its principal place of business at 3450 Buschwood Park Drive, Tampa, Florida, 33618.

37161445.5

## Jurisdiction and Venue

13.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 in that the controversy is between citizens of a state and citizens of a foreign state and the amount in controversy exceeds $75,000 exclusive of interest and costs.

14.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b).

## Facts

A.     The Actions

15.     Beginning in 2017, HII, along with various of its officers and directors, was named as a defendant (or nominal defendant) in the following lawsuits (collectively referred to herein as the "Actions"):

a.     *In re Health Insurance Innovations Securities Litigation*, No. 17-cv-02186, U.S. District Court, Middle District of Florida (the "Rector Action");

b.     *DiFalco v. Gavin T. Southwell, et al.*, No. 1:18-cv-00519-UNA, U.S. District Court, District of Delaware (the "DiFalco Action");

c.     *Daniels v. Southwell, et al.*, No. 18-cv-527, U.S. District Court, District of Delaware (the "Daniels Action");

d.     *Keippel v. Health Insurance Innovations, Inc., et al.*, No. 8:19-cv-00421, U.S. District Court, Middle District of Florida (the "Keippel Action");

e.     *Klein v. Southwell, et al.*, No. 19-cv-1206, U.S. District Court,

District of Delaware (the "Klein Action"); and

       f.    *Leary v. Paul E. Avery, et al.*, No. 20-cv-664, U.S. District Court, District of Delaware (the "Leary Action").

16.    The Rector and Keippel Actions are securities class actions. The DiFalco, Daniels, Klein, and Leary Actions are derivative actions.

17.    The complaint in the Rector Action was filed in or about September 21, 2017 and subsequently tendered by HII to Underwriters.

18.    The complaint in the DiFalco Action was filed in or about April 5, 2018 and subsequently tendered by HII to Underwriters.

19.    The complaint in the Daniels Action was filed in or about April 6, 2018 and subsequently tendered by HII to Underwriters.

20.    The complaint in the Keippel Action was filed in or about February 18, 2019 and subsequently tendered by HII to Underwriters.

21.    The complaint in the Klein Action was filed in or about June 26, 2019 and subsequently tendered by HII to Underwriters.

22.    The complaint in the Leary Action was filed in or about May 15, 2020 and subsequently tendered by HII to Underwriters.

23.    During the time periods relevant to this action, HII developed, sold and administered short-term health insurance products.

24.    The short-term health insurance policies typically last six months, and

37161445.5

do not qualify as "minimal essential coverage" under the Affordable Care Act (the "ACA"), meaning individuals with these insurance policies will still pay a tax penalty for not having health insurance.

25.     The plaintiffs in the Actions alleged deceptive sales practices with respect to these products by HII or third-party call centers making false and misleading statements to consumers in connection with the sale of HII's insurance products centered on the breadth of coverage offered by HII's products and the compliance of those products with the ACA.

26.     The plaintiffs in the Actions alleged false statements and material omissions in SEC filings and other public statements to conceal those deceptive sales practices.

27.     The plaintiffs in the Actions alleged that HII's products were sold outside of the marketplace established by the ACA, and therefore need not comply with many ACA regulations, such as providing coverage of pre-existing conditions.  As a result, the plaintiffs alleged, short-term medical polices, health benefit plans, and ancillary insurance administered by HII are not considered to be qualifying health coverage under the ACA.

28.     The plaintiffs in the Actions alleged that HII or its agents represented to potential customers that HII's products were ACA-compliant plans that would allow a consumer to avoid receiving a tax penalty.

29.     The plaintiffs in the Actions alleged that, contrary to these representations, the HII products typically had multiple exclusions, including an exclusion for preexisting conditions.  The plaintiffs further alleged that, because the products did not qualify as "minimal essential coverage" under the ACA, these products were subject to a tax penalty.

30.     The plaintiffs in the Actions alleged that this conduct by HII and its agents amounted to a scheme to defraud.

31.     The plaintiffs in the Actions asserted that the HII defendants made misrepresentations and/or material omissions in statements contained in SEC filings and other public statements concerning the HII sales practices described above.

32.     The plaintiffs in the Actions alleged both non-disclosures and affirmative misrepresentations arising from the same facts and circumstances, *i.e.*, HII's deceptive sales practices with respect to the scope of coverage offered by its products and the compliance of those products with the ACA.   These misrepresentations and omissions, according to the plaintiffs, were intended to conceal the fact that consumers were falsely lead to believe that they were purchasing a health insurance policy that was compliant with the ACA and offered other benefits such as access to preferred networks of providers.

33.     The alleged wrongful acts in the Actions were neither factually nor

legally distinct and involve logically connected facts and circumstances.  These alleged wrongful acts concerned false and deceptive practices in the method by which HII and its agents sold their insurance products.

34.    As a result of these allegedly material misstatements and/or omissions, the plaintiffs in the Actions asserted that they had purchased HII securities at artificially inflated prices, causing them monetary damages when the truth was later revealed.

      B.    <u>Underwriters' Policies</u>

35.    Underwriters issued a professional liability policy, Policy No. B0507N17FT08360, to HII as the Named Insured for the period from May 8, 2017 to May 8, 2018.  A true and accurate copy of the 2017-2018 Policy is attached as Exhibit A.

36.    Underwriters issued a professional liability policy, Policy No. B0621PHEAL003118, to HII as the Named Insured for the period from May 8, 2018 to May 8, 2019.  A true and accurate copy of the 2018-2019 Policy is attached as Exhibit B.

37.    Each of the Policies is a claims made and reported policy.

38.    The insuring agreement in each of the Policies states the following:

> In consideration of the payment of the premium, in reliance on the **Application** and subject to all of the provisions of this Policy, Underwriters and the **Insureds** agree as follows:

## I.  INSURING CLAUSES

*      *      *

B. Underwriters shall pay on behalf of the **Company:**

    1. **Loss** which the **Company** is required or permitted or has agreed to pay as indemnification to any of the **Insured Persons** resulting from any **Claim** first made against the **Insured Persons** during the **Policy Period** for a **Wrongful Act**; ….

C. Underwriters shall pay on behalf of the **Company Loss** resulting from any **Securities Claim** first made against the **Company** due the **Policy Period** for a **Wrongful Act**.

39.      Each of the Policies defines "**Claim**" as "any written demand for monetary damages, nonmonetary relief, injunctive relief or other relief against any of the **Insureds**, or any civil, criminal, administrative, regulatory, arbitration or mediation proceeding or other alternative dispute resolution process initiated against any of the **Insureds** . . . ."

40.      Each of the Policies define "**Securities Claim**" as follows:

X. "**Securities Claim**" means:

    1. (a)  any demand or proceeding describe in Clause II.B.1. [definition of "Claim"] against any of the **Insureds**, other than an administrative or regulatory proceeding . . .

*      *      *

alleging any violation of the Securities Act of 1933, the

-10-

Securities Exchange Act of 1934, rules or regulations of the Securities and Exchange Commission under either or both Acts, similar securities laws or regulations of any federal, state (including any state blue sky laws), local or any foreign jurisdiction . . . arising out of, involving, or relating to the ownership, purchase or sale of or offer to purchase or sell any securities of the **Company**, including any debt or equity securities, whether on the open market or through a public or private offering, or

2. any demand or proceeding described in Clause II.B.1. against any of the **Insureds** which is brought by a security holder of the **Company** on their capacity as such, including a **Derivative Suit**,

but shall not include any **Security Holder Demand**.

41.    Each of the Policies defines "**Wrongful Act**" as

"**Wrongful Act**" means any actual or alleged act, error, omission, misstatement, misleading statement, neglect or breach of duty:

….

2. by any of the **Insured Persons**, while acting in their capacity as, or any matter claimed against any of the **Insured Persons** solely by reason of their serving as:

(a) a controlling person within the meaning of Section 15 of the Securities Act of 1933, as amended or Section 20(a) of the Securities Exchange Act 1934, as amended ….

3. by the **Company** involving a **Securities Claim**.

42.    Each of the Policies defines "Costs, Charges and Expenses" as follows:

"**Costs, Charges and Expenses**" means:

1. reasonable and necessary legal fees and expenses including reasonable and necessary expert fees incurred by the **Insureds** in defense and appeal of any **Claim** or **Investigation** and cost of attachment or similar bonds, and

2. in respect of coverages afforded under Clause II.B.2., reasonable costs (other than collateral) for a bond or other financial instrument to guarantee the contingent obligation of the **Insured Persons** for bail or its equivalent required by a court in any foreign jurisdiction,

but shall not include salaries, wages, o associated with directors, officers or employees of the **Company**.

43.     The Policies provide for a $750,000 deductible for each **Securities Claim** and a limit of liability of $10,000,000 in the aggregate.

44.     Each of the Policies define "**Interrelated Wrongful Acts**" as "**Wrongful Acts** which have as a common nexus any fact, circumstance, situation, event, transaction or series of facts, circumstances, situations, events or transactions."

45.     Each of the Policies contains the following provision on its Declarations page:

THIS IS A CLAIMS MADE AND REPORTED POLICY, SUBJECT TO ITS TERMS, THIS POLICY APPLIES ONLY TO ANY **CLAIM** FIRST MADE, ANY **INVESTIGATION** FIRST COMMENCED AND ANY **INQUIRY** FIRST REPORTED DURING THE POLICY PERIOD PROVIDED:

> (1) SUCH **CLAIM** OR **INVESTIGATION** IS REPORTED TO UNDERWRITERS IN ACCORDANCE WITH THE TERMS OF CLAUSE VI.A. . . . .
>
> \*     \*     \*
>
> AMOUNTS INCURRED AS **COSTS, CHARGES AND EXPENSES** AND **INQUIRY COSTS** SHALL REDUCE AND MAY EXHAUST THE LIMIT OF LIABILITY OR THE SUBLIMIT OF LIABILITY, IF APPLICABLE, AND ARE SUBJECT TO THE RETENTIONS. THIS POLICY DOES NOT PROVIDE FOR ANY DUTY BY UNDERWRITERS TO DEFEND ANY OF THE **INSUREDS**.

46.    Each of the Policies contains the following provision within its Limit of Liability, Retentions and Order of Payments section:

> More than one **Claim** involving the same **Wrongful Act** or **Interrelated Wrongful Acts** shall be deemed to constitute a single **Claim** and shall be deemed to have been made at the earliest of the following dates:
>
> 1. the date on which the earliest **Claim** involving the same **Wrongful Act** or **Interrelated Wrongful Acts** is first made; or
>
> 2. the date on which the Claim involving the same **Wrongful Act** or **Interrelated Wrongful Acts** shall be deemed to have been made pursuant to Clause VI.C.

47.    Each of the Policies include the following exclusion:

> **III.    EXCLUSIONS**
>
> Underwriters shall not be liable to make any payment in connection with that portion of any **Claim**, **Investigation**

or **Inquiry**:

\*      \*      \*

B. based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any involving:

1. any **Wrongful Act** or any fact, circumstance or situation which has been the subject of any notice given prior to the **Policy Period** and accepted under any other Directors and Officers Liability or Employment Practices Liability Policy of which this Policy is a renewal, replacement or which it succeeds in time,

2. any other **Wrongful Act** whenever occurring, which, together with a **Wrongful Act** which has been the subject of such notice, would constitute **Interrelated Wrongful Acts**, or

3. any written demand, suit, investigation or other proceeding pending, or order, decree or judgment entered, against any **Insured** prior to the date set forth in Item K. of the Declarations, or any **Wrongful Act**, fact, circumstance or situation underlying or alleged therein[.]

48.     Each of the Policies include a Choice of Law provision that states that the Policies shall be governed by and construed in accordance with the law of New York.

C.     Defense and Settlement of the Actions

49.     Underwriters received notice of the Rector Action in 2017. Underwriters agreed to provide a defense under a full reservation of rights.

50.     Underwriters received notice of the DiFalco Action in 2018.

Underwriters agreed to provide a defense under a full reservation of rights.

51.     Underwriters received notice of the Daniels Action in 2018. Underwriters agreed to provide a defense under a full reservation of rights.

52.     Underwriters received notice of the Keippel Action in 2019. Underwriters agreed to provide a defense under a full reservation of rights.

53.     Underwriters received notice of the Klein Action in 2020. Underwriters agreed to provide a defense under a full reservation of rights.

54.     By letter dated December 30, 2019, Underwriters notified HII that the Keippel Action and the Klein Action involved the same Wrongful Act or Interrelated Wrongful Acts as the Rector, DiFalco, and Daniels Actions, and thus constituted a single Claim first made during the 2017-2018 policy period.

55.     HII declined to accept Underwriters' position with respect to the Keippel Action and demanded that Underwriters acknowledge coverage for the Keippel Action under the 2018-2019 Policy.

56.     Underwriters maintained their position and explained to HII in various correspondence why all of the Actions arose out of the same Wrongful Act or Interrelated Wrongful Acts and thus constituted a single Claim first made during the 2017-2018 Policy.

57.     Underwriters also notified HII that, pursuant to Exclusion III.B in the 2018-2019 Policy, there was no coverage for the Keippel Action under the 2018-

-15-

2019 Policy because it was based upon, arose out of, directly or indirectly resulted from or in consequence of, or in any way involved a Wrongful Act which, together with a Wrongful Act alleged in any of the Rector, DiFalco or Daniels Actions, constitute Interrelated Wrongful Acts.

58.     Underwriters treated the Actions as a single Claim first made during the 2017-2018 Policy.

59.     In or about June 2020, HII agreed to pay $2,800,000 to settle the Rector Action, which Underwriters agreed to fund out of the limit of liability for the 2017-2018 Policy.

60.     As of September 1, 2020, Underwriters had paid approximately $6,000,000 in Costs, Charges and Expenses (as that phrase is defined in the Policies) with respect to the Actions out of the limit of liability for the 2017-2018 Policy.

61.     In September 2020, HII believed there was an opportunity to settle the Keippel Action.

62.     At this time, the amount remaining in the limit of the 2017-2018 Policy was approximately $1,200,000.  HII's defense counsel had incurred but unpaid defense costs of nearly $1,000,000, which would have been paid from the 2017-2018 Policy to the extent they constituted Costs, Charges and Expenses. Thus, assuming the unpaid defense costs constituted Costs, Charges and Expenses,

the amount remaining in the limit of the 2017-2018 Policy to offer to settle the Keippel Action was approximately $200,000.

63.     Underwriters again requested that HII acknowledge that the Keippel Action constituted a Claim first made under the 2017-2018 Policy and that HII fund any settlement of the Keippel Action from available insurance in the 2017-2018 policy period.  HII declined Underwriters' requests.

64.     Instead, on multiple occasions in September and October 2020, HII representatives demanded that Underwriters pay the full $10,000,000 limit of liability under the 2018-2019 Policy to the defense and settlement of the Keippel Action.

65.     Following HII's refusal of Underwriters' requests, and in order to protect their insureds' interests in the Keippel Action, Underwriters funded the defense and settlement of the Keippel Action, up to the limit of liability in the 2018-2019 Policy, under a full reservation of rights, including the right to seek recoupment from HII of the amounts paid with respect to the Keippel Action under the 2018-2019 Policy.

66.     After re-allocating Costs, Charges and Expenses (as that phrase is defined in the Policies) paid to date by Underwriters with respect to the Keippel Action from the 2017-2018 Policy to the 2018-2019 Policy, Underwriters paid $6,392,396.85, the balance of the limit of liability under the 2018-2019 Policy, to

fund a portion of the settlement of the Keippel Action.

67.     Underwriters have paid the full $10,000,000 limit of liability under the 2018-2019 Policy.

68.     To date, Underwriters have paid $5,290,310.45 for the defense and settlement of the Actions other than the Keippel Action.  This amount erodes the limit of liability under the 2017-2018 Policy.

69.     As of the filing of this Complaint, Underwriters have paid $15,290,310.45 in Costs, Charges and Expenses and settlement payments with respect to the Actions, $5,290,310.45 in excess of the $10,000,000 limit of liability under the 2017-2018 Policy, their maximum exposure for the Actions.

70.     Underwriters continue to receive requests for payment of Costs, Charges and Expenses with respect to the Actions.

## FIRST CAUSE OF ACTION
## DECARATORY JUDGMENT

71.     Plaintiffs incorporate the allegations set forth in paragraphs 1 through 70 of their Complaint as if fully set forth herein.

72.     Under the terms and conditions of each of the Policies, Claims involving the same Wrongful Act or Interrelated Wrongful Acts constitute one Claim deemed to have been made on the date on which the earliest Claim involving the same Wrongful Act or Interrelated Wrongful Acts is first made.

73.     All of the Actions involve the same Wrongful Act or Interrelated

Wrongful Acts.

74.     All of the Actions therefore are considered first made during the 2017-2018 Policy and are subject to a single $10,000,000 limit of liability.

75.     An actual controversy exists between Plaintiffs and HII regarding whether all of the Actions constitute a single Claim first made against HII during the 2017-2018 Policy.

76.     Pursuant to 28 U.S.C. § 2201, Plaintiffs are entitled to the following declarations:

a.     All of the Actions involve the same Wrongful Act or Interrelated Wrongful Acts;

b.     As a result, the Actions constitute one Claim first made during the 2017-2018 Policy and subject to the $10,000,000 aggregate limit of liability under the 2017-2018 Policy;

c.     Because the Policies require that Claims be first made against HII during the policy period, there is no coverage for any of the Actions under the 2018-2019 Policy;

d.     Underwriters are entitled to payment from HII of the amount of Costs, Charges and Expenses and settlement payments paid with respect to the Actions in excess of the $10,000,000 aggregate limit of liability under the 2017-2018 Policy, plus interest, and all recoverable fees, costs and expenses.

## SECOND CAUSE OF ACTION
## DECLARATORY JUDGMENT

77.     Plaintiffs incorporate the allegations set forth in paragraphs 1 through 76 of their Complaint as if fully set forth herein.

78.     Under Section II.B of the 2018-2019 Policy, there is no coverage for any portion of any Claim based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any involving (a) any Wrongful Act which has been the subject of any notice given prior to the Policy Period and accepted under any other Directors and Officers Liability or Employment Practices Liability Policy of which this Policy is a renewal, replacement or which it succeeds in time, or (b) any other Wrongful Act whenever occurring, which, together with a Wrongful Act which has been the subject of such notice, would constitute Interrelated Wrongful Acts.

79.     The Keippel Action involves Wrongful Acts that are the subject of notices given in the 2017-2018 policy period with respect to one or more of the Rector Action, the DiFalco Action, or the Daniels Action.

80.     The Keippel Action involves Wrongful Acts, which, together with the Wrongful Act or Acts alleged in one or more of the Rector Action, the DiFalco Action, or the Daniels Action, constitute Interrelated Wrongful Acts.

81.     An actual controversy exists between Plaintiffs and HII regarding whether the Keippel Action is excluded from coverage pursuant to Section III.B of

37161445.5

the 2018-2019.

82.     Pursuant to 28 U.S.C. § 2201, Plaintiffs are entitled to the following declarations:

a.      There is no coverage for the Keippel Action under the 2018-2019 Policy based on the exclusion contained at Section III.B of the 2018-2019 Policy;

b.      Underwriters are entitled to payment from HII of the amount of Costs, Charges and Expenses and settlement payments paid with respect to the Keippel Action under the 2018-2019 Policy, plus interest, and all recoverable fees, costs and expenses.

**THIRD CAUSE OF ACTION**
**REIMBURSEMENT**

83.     Plaintiffs incorporate the allegations set forth in paragraphs 1 through 82 of their Complaint as if fully set forth herein.

84.     Underwriters paid $10,000,000 under the 2018-2019 Policy on behalf of HII with respect to the Keippel Action.

85.     At the time HII demanded that Underwriters fund a settlement of the Keippel Action from the 2018-2019 Policy, HII was on notice that Underwriters disputed their obligation to pay any amounts with respect to the Keippel Action under the 2018-2019 Policy, as evidenced by the reservation of rights letters and other letters from their counsel to HII's counsel immediately before the settlement of the Keippel Action.

86.     Underwriters made this payment to protect HII's interests vis-à-vis the plaintiff in the Keippel Action and not for their own interest.

87.     Under the terms of the Policies, the Keippel Action, along with the other Actions, constitutes a single Claim first made during the 2017-2018 policy period.

88.     The maximum amount of Underwriters' responsibility for Costs, Charges and Expenses, settlements and judgments for the Actions was $10,000,000.

89.     The unpaid amount of the limit under the 2017-2018 Policy was the maximum amount that Underwriters should have been obligated to pay towards the settlement of the Keippel Action.

90.     Underwriters therefore are entitled to reimbursement from HII of the amount of Costs, Charges and Expenses and settlement payments paid with respect to the Actions in excess of the $10,000,000 aggregate limit of liability under the 2017-2018 Policy, plus interest, and all recoverable fees, costs and expenses.

## FOURTH CAUSE OF ACTION
## UNJUST ENRICHMENT

91.     Plaintiffs incorporate the allegations set forth in paragraphs 1 through 90 of their Complaint as if fully set forth herein.

92.     As of October 1, 2020, Underwriters had paid, or committed to pay, Costs, Charges and Expenses and settlements totaling $5,290,310.45 under the

2017-2018 Policy for the Rector, DiFalco, Daniels, Klein, and Leary Actions.

93.     Under the terms of the Policies, the Keippel Action, along with the other Actions, constitutes a single Claim first made during the 2017-2018 policy period.

94.     HII refused to agree that the Actions constituted a single Claim first made against HII during the 2017-2018 Policy, and instead demanded that Underwriters pay $10,000,000 under the 2018-2019 Policy to limit its exposure to plaintiff in the Keippel Action.

95.     At the demand of HII, Underwriters agreed to pay $10,000,000 under the 2018-2019 Policy with respect to the Keippel Action.

96.     HII received a benefit from Underwriters' payment of $10,000,000 with respect to the Keippel Action.

97.     It was unjust for Underwriters to pay in excess of $10,000,000 for Costs, Charges and Expenses in and settlement of the Actions.

98.     HII has been unjustly enriched by the amount of payments by Underwriters with respect to the Actions in excess of $10,000,000.

99.     Underwriters have been damaged by HII's demand that Underwriters pay $10,000,000 with respect to the Keippel Action from the 2018-2019 Policy and its refusal to request or otherwise pursue contribution from the insurers in the 2017-2018 policy period for the settlement of the Keippel Action.

100.     Underwriters therefore are entitled to payment from HII of the amount of the Costs, Charges and Expenses and settlement payments paid with respect to the Actions in excess of the $10,000,000 aggregate limit of liability under the 2017-2018 Policy, plus interest, and all recoverable fees, costs and expenses.

**FIFTH CAUSE OF ACTION**
**BREACH OF CONTRACT**

101.     Plaintiffs incorporate the allegations set forth in paragraphs 1 through 100 of their Complaint as if fully set forth herein.

102.     HII contracted with Underwriters to receive insurance under the 2017-2018 Policy and the 2018-2019 Policy, subject to the terms and conditions in those policies.

103.     Although HII agreed that more than one Claim involving the same Wrongful Act or Interrelated Wrongful Acts shall be deemed to constitute a single Claim and shall be deemed to have been made on the date on which the earliest Claim involving the same Wrongful Act or Interrelated Wrongful Acts is first made, HII refused to abide by these contract terms with respect to the Keippel Action.

104.     By failing to abide by these contract terms, HII breached its contract with Underwriters.

105.     As a result, Underwriters were required to pay $10,000,000 under the 2018-2019 Policy with respect to the Keippel Action.

37161445.5

106.     As a direct and proximate result of HII's breach of its contracts with Underwriters, Underwriters have sustained damages in the amount of the Costs, Charges and Expenses and settlement payments paid with respect to the Actions in excess of the $10,000,000 aggregate limit of liability under the 2017-2018 Policy, plus interest, and all recoverable fees, costs and expenses.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment:

(1)     Declaring that:

a. All of the Actions involve the same Wrongful Acts or Interrelated Wrongful Acts;

b. As a result, the Actions constitute one Claim subject to the $10,000,000 aggregate limit of liability under the 2017-2018 Policy issued by Underwriters to HII;

c. Because the Policies apply only to Claims first made and first reported during the policy period for each Policy, Underwriters have no obligation to indemnify the Insureds or pay Costs, Charges and Expenses with respect to the Actions under the 2018-2019 Policy;

d. There is no coverage for the Keippel Action under the 2018-2019 Policy based on the exclusion contained at Section III.B

37161445.5

of the 2018-2019 Policy;

    e.  Underwriters' obligation to indemnify the Insureds or pay Costs, Charges and Expenses with respect to the Actions under the 2017-2018 Policy is limited to the $10,000,000 aggregate limit;

    f.  Underwriters are entitled to payment from HII of the amount of the Costs, Charges and Expenses and settlement payments paid with respect to the Actions in excess of the $10,000,000 aggregate limit of liability under the 2017-2018 Policy, plus interest.

(2)    Ordering HII to return or re-pay the amount of the Costs, Charges and Expenses and settlement payments paid with respect to the Actions in excess of the $10,000,000 aggregate limit of liability under the 2017-2018 Policy, plus interest.

(3)    Granting Plaintiffs such other and further relief as the Court may deem just and proper.

37161445.5

DATED:  March 12, 2021          WICKER SMITH

By: /s/ Richards H. Ford
Richards H. Ford
WICKER, SMITH, O'HARA, MCCOY &
FORD, P.A.
390 North Orange Avenue
Suite 1000
Orlando, FL  32801
407-843-3939
rford@wickersmith.com


Matthew M. Burke (pro hac vice forthcoming)
ROBINS KAPLAN LLP
800 Boylston Street, Suite 2500
Boston, MA 02199
617-267-2300
mburke@robinskaplan.com

Attorneys for HISCOX DEDICATED
CORPORATE MEMBER LIMITED and
BEAZLEY UNDERWRITING LIMITED

37161445.5